# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD ANTHONY BESHWATE, JR., et al., | Case No. 1:17-cv-00417-SAB |
| Plaintiffs, | ORDER GRANTING DEFENDANT CARMAX' MOTION TO DISMISS |
| v. | (ECF Nos. 27, 28, 30, 31) |
| BMW OF NORTH AMERICA, LLC, et al., | FOURTEEN DAY DEADLINE |
| Defendants. | |

Currently before the Court is Defendant CarMax's motion to dismiss and motion to strike. Having considered the moving, opposition and reply papers, the declarations and exhibits attached thereto, as well as the Court's file, the Court issues the following order.

## I.

## PROCEDURAL HISTORY

On February 17, 2017, Plaintiffs Richard Anthony Beshwate, Jr., and Bonnie Joy Beshwate ("Plaintiffs") filed this action in Fresno County Superior Court. (ECF No. 1-1.) On March 22, 2017, Defendant CarMax Auto Superstores California, LLC ("Defendant CarMax") removed this action to the Eastern District of California with the consent of Defendant BMW of North America, LLC ("Defendant BMW"). (ECF No. 1.) On March 29, 2017, Defendant BMW filed an answer and Defendant CarMax consented to the jurisdiction of the magistrate judge.

(ECF Nos. 7, 8.)

Defendant CarMax filed a motion to dismiss and motion to strike on April 25, 2017. (ECF Nos. 11, 12.) On April 28, 2017, Defendant BMW consented to the jurisdiction of the magistrate judge. (ECF No. 13.) On May 1, 2017, Plaintiffs consented to the jurisdiction of the magistrate judge. (ECF No. 14.) At the stipulation of the parties, Plaintiffs were granted leave to file an amended complaint and Defendant CarMax's motion to dismiss and motion to strike were terminated. (ECF No. 21.) On August 15, 2017, Plaintiffs filed a first amended complaint alleging violations of the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code §§ 1790, et seq.; Breach of the Implied Warranty of Merchantability; Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq. (ECF No. 24.)

Defendant BMW filed an answer to the first amended complaint on August 29, 2015. (ECF No. 26.) Defendant CarMax filed a motion to dismiss and motion to strike on September 5, 2017. (ECF No. 27.) On September 20, 2017, Plaintiffs filed an opposition to the motion to dismiss and motion to strike. (ECF No. 30.) On September 26, 2017, Defendant CarMax filed a reply. (ECF No. 31.)

## II.

## ALLEGATIONS IN FIRST AMENDED COMPLAINT

Plaintiffs' first amended complaint alleges causes of action against Defendant CarMax for violation of the Song-Beverly Act; breach of the implied warranty of merchantability; CLRA; and the UCL based on Plaintiffs purchase of a used 2011 BMW 550i Gran Turisimo.

Around November 4, 2014, Plaintiff CarMax advertised a used 2011 BMW 550i Gran Turisimo for sale to the public. (First Am. Compl. ("FAC") ¶ 16, ECF No. 24.) Plaintiffs purchased the vehicle from Plaintiff CarMax for a total of $38,895.87, including taxes, licensing fees and financing. (FAC ¶ 18.) Plaintiff's traded in their Mercedes Benz and paid Defendant CarMax the total purchase price of the vehicle. (FAC ¶ 20.) The vehicle was purchased primarily for personal, household and family use. (FAC ¶ 21.) At the time the BMW was purchased it had 26,135 miles on the odometer and had the remainder of the basic factory

warranty of 50,000 miles or 48 months remaining.  (FAC ¶ 23.)  The vehicle also was subject to the seven year or 70,000 mile California Emission Warrantee.  (FAC ¶ 25.)

Defendant CarMax had advertised that their used vehicles were subject to a "rigorous 125-Point Quality Inspection" and represented to Plaintiff's that the vehicle had passed the inspection.  (FAC ¶¶ 29, 31.)  Defendant CarMax represented that "We check over 125 points including (but not limited to):" and itemizes various vehicle operational and mechanical components related to the vehicle's engine, cooling system, fuel system, drive axle, transmission, suspension system, electrical system, brake system, steering systems, body/interior, heating and A/C system, lighting system, accessories, and "miscellaneous."  (FAC ¶ 32.)  Although Defendant CarMax used an inspection checklist for their mechanics and/or technicians to note the condition of each of the inspected components, Defendant CarMax included a single-page unsigned Certificate of Quality Inspection ("CQI") that included no specific information about the vehicle with the purchase.  (FAC ¶¶ 30, 34, 86.)  Consumers were not provided with a copy of the inspection checklist.  (FAC ¶ 89.)

Plaintiffs believe that the vehicle they purchased contains the N63 engine which has been found to have defects that impact the safety, reliability, and merchantability of the vehicle.  (FAC ¶ 42.)  Within a few months of purchasing the vehicle, Plaintiff's vehicle had an engine and/or drive train malfunction and repeated warning lights which resulted in various stored fault codes.  (FAC ¶ 43.)  Plaintiffs returned the vehicle to Defendant CarMax complaining of these problems and were told to take the vehicle to a BMW authorized repair facility as the vehicle was still covered by the manufacturer's warranty.  (FAC ¶¶ 44, 45.)

Plaintiffs took the vehicle to BMW Fresno, an authorized dealership, for repairs at least seven times and the vehicle was out of service on these seven occasions.  (FAC ¶ 46.)  In April 2015 the service record notes: "CHANGE ENGINE OIL AND FILTER MODIFY THE OIL SERVICE INTERVAL PROGRAMING AND ENCODE ALL AND E7X WITHOUT CAS" and "PERFORMED SIB 110614 CUSTOMER CARE PACKAGE."  (FAC ¶ 47.)  In June 2015, the service record notes: "CHARGED VEHICLE BATTERY" and "PERFORMED SIB 130215 N63 REPLACE HIGH PRESSURE FUEL PUMPS."  (FAC ¶ 48.)

In August 2015, Plaintiffs experienced problems shifting, the check engine light went on, and the vehicle was taken to BMW Fresno. (FAC ¶ 49.) The service record notes: "CONNECT BATTERY CHARGER" and "REVIEW VEHICLE HISTORY. HIGH FUEL PRESSURE PLAUSIBILITY FAULTS [sic]. MISSFIRE FAULTS, LOW PRESURRE FUEL FAULTS." (FAC ¶ 49.)

In September 2015 the engine malfunction light came on (drivetrain malfunction) and they took the car to BMW Fresno. (FAC ¶ 50.) The drivetrain malfunction light came on again in August 2016. (FAC ¶ 51.) Despite Plaintiffs' efforts to have the vehicle repaired, the dangerous and defective issues with the vehicle have not been fixed leaving the BMW in defective condition. (FAC ¶ 53.) Plaintiffs have demanded a buy-back/repurchase of the BMW, but Defendants CarMax and BMW have refused to buy-back or repurchase the vehicle. (FAC ¶¶ 58, 59.)

Since 2008, Defendants CarMax and BMW knew or should have known that the N63 engine has defects causing it to improperly burn off and/or consume abnormally high amounts of oil, create excess heat causing engine components to fail prematurely and cause premature wear of the engine battery resulting in the need to replace the battery as often as every 10,000 miles or 1 year which is well before the useful life of an automotive battery. (FAC ¶ 61.) The motor oil defect is a safety concern because it can cause engine failure while operating the vehicle additionally; it can result in engine damage. (FAC ¶¶ 63, 64.) Defendant BMW acknowledged the battery defect in December 2014 in a Technical Service bulletin that instructed dealers to replace the batteries of vehicles with the N63 at every engine oil service covered within the 4 year/50,000 mile maintenance program. (FAC ¶ 68.) Defendant BMW acknowledged other defects with the N63 engine when it extended warranties on the fuel delivery module in July 2015, engine pump vacuum in January 2016, and cylinder head covers crankcase ventilation hose lines in January 2016. (FAC ¶ 69.)

At the time that Plaintiffs purchased the BMW, the manufacturer's guidelines recommended replacing the engine oil every 15,000 miles or 2 years. (FAC ¶ 73.) In December 2014, Defendants issued a service bulletin stating that the engine oil should be serviced every

10,000 miles or 12 months which is a significant increase in the frequency of required oil servicing. (FAC ¶ 74.) This bulletin was issued only to authorized service centers and vehicle owners were not notified of the significant change in suggested oil service interval. (FAC ¶ 75.)

Defendant CarMax did not include an inspection or determination whether there were any open manufacturer recalls for defective conditions that exist in the vehicles that it advertises and sells. (FAC ¶ 97.) Defendant CarMax presented a document entitled "Important Information Regarding Your Purchase – Manufacturer Recalls" and requested that Plaintiffs sign it. (FAC ¶ 101.)

### III.

### LEGAL STANDARDS

#### A.    Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. Iqbal, 556 U.S. at 678-79. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

In deciding whether a complaint states a claim, the Ninth Circuit has found that two principles apply. First, to be entitled to the presumption of truth the allegations in the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly

suggest an entitlement to relief.  <u>Starr</u>, 652 F.3d at 1216.

**B.    Motion to Strike**

Rule 12(f) provides that "the court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Motions to strike pursuant to Rule 12(f) are generally regarded with disfavor and the remedy is to be used only "when necessary to discourage parties from raising allegations completely unrelated to the relevant claims and when the interests of justice so require."  <u>Sapiro v. Encompass Ins.</u>, 221 F.R.D. 513, 517 (N.D. Cal. 2004).

The purpose of a motion to strike under Rule 12(f) "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  <u>Whittlestone, Inc. v. Handi-Craft Co.</u>, 618 F.3d 970, 973 (9th Cir. 2010) (citations omitted).  Immaterial matter "has no essential or important relationship to the claims for relief or defenses being pleaded"; and "impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question."  <u>Fantasy, Inc. v. Fogerty</u>, 984 F2d 1524, 1527 (9th Cir. 1993), <u>rev'd on other grounds</u>, 510 U.S. 517 (1994).

**IV.**

**DISCUSSION**

**A.    Jurisdiction**

Initially, the federal court has the duty to determine if it has jurisdiction over an action. <u>Basso v. Utah Power & Light Co.</u>, 495 F.2d 906, 909 (10th Cir. 1974).  Since Defendant removed this action on the basis of diversity jurisdiction, the Court shall consider whether diversity jurisdiction exists.

Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to that granted by Congress.  <u>U.S. v. Sumner</u>, 226 F.3d 1005, 1009 (9th Cir. 2000).  As relevant here, district courts have original jurisdiction of all civil actions between citizens of different States in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a).  This requires complete diversity of citizenship and the presence "of a single plaintiff from the same State as a single defendant deprives the district

court of original diversity jurisdiction over the entire action." Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 679 (9th Cir. 2006) (citations omitted). In this circuit, where the amount of damages is not specified in the complaint, it is the removing party's burden to show by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount. Lewis v. Verizon Communications, Inc., 627 F.3d 395, 397 (9th Cir. 2010); Abrego Abrego, 443 F.3d at 679; Guglielmino v. McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007).

In a diversity action, the removing defendant has the burden of establishing the amount in controversy by a preponderance of the evidence. Rodriguez v. AT & T Mobility Servs. LLC, 728 F.3d 975, 977 (9th Cir. 2013). Jurisdiction is analyzed based upon the pleadings filed at the time of removal without reference to any subsequent pleadings filed in the action. Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc., 159 F.3d 1209, 1213 (9th Cir. 1998).

1.   Diversity of Citizenship

Defendant CarMax is a limited liability company organized under the laws of the Commonwealth of Virginia and with its principal place of business in the Commonwealth of Virginia. (Notice of Removal 3, ECF No. 1; Compl. ¶ 4.) A limited liability company is a citizen of every state of which its owners or members are citizens. Johnson v. Columbia Properties Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006). The sole member of Defendant CarMax Auto Superstores is CarMax Auto Superstores West Coast, Inc. which is incorporated under the laws of the Commonwealth of Virginia with its principal place of business in the Commonwealth of Virginia. (Notice of Removal 4; ECF No. 1-3.) A corporation is deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. Lincoln Prop. Co. v. Roche, 546 U.S. 81, 94 (2005) (quoting 28 U.S.C. § 1332(c)(1)). Therefore, Defendant CarMax is a citizen of the Commonwealth of Virginia.

Defendant CarMax asserts that Defendant BMW is a limited liability company organized under the laws of the State of Delaware and with its principal place of business in the State of

New Jersey. (Notice of Removal 4;[1] Compl. ¶ 3.) Defendant CarMax also contends that the sole member of Defendant BMW is BMW (US) Holding Corp. which is a corporation organized under the laws of the State of Delaware and with its principal place of business in New Jersey. Therefore, Defendant BMW is a citizen of Delaware and New Jersey.

Defendant CarMax contends that Plaintiffs are citizens of California, referencing the complaint in which Plaintiffs allege that they reside in California. (FAC ¶ 1; ECF No. 1-1 at 18, 19.) "[T]he diversity jurisdiction statute, 28 U.S.C. § 1332, speaks of citizenship, not of residency." Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." Kanter, 265 F.3d at 857. While courts treat domicile as prima facie evidence to citizenship, the presumption has not been adopted in the Ninth Circuit. Mondragon v. Capital One Auto Fin., 736 F.3d 880, 886 (9th Cir. 2013).

Plaintiffs have not challenged the assertion that they are citizens of California. Plaintiffs have declared that they reside in Fresno County, the motor vehicle was purchased in Fresno County, and the motor vehicle is permanently housed in Fresno County. (ECF No. 24 at pp. 28, 29.) The Court finds that Plaintiffs are citizens of California and therefore complete diversity of citizenship exists in this action.

2.    Amount in Controversy

In the notice of removal, Defendant CarMax states that Plaintiffs are seeking restitution of the purchase contract valued at $38,895.87, a civil penalty of up to two times the actual damages, attorney fees as authorized by statute, and injunctive relief. (Notice of removal 5, ECF No. 1; Compl. p. 17, ECF No. 1-1.)

The amount in controversy is merely an estimate of the total amount in dispute; and the Ninth Circuit expressly contemplates that the district court will consider some evidentiary record in determining the amount in controversy. Lewis, 627 F.3d at 400. Plaintiff is seeking restitution of $38,895.87 and civil penalties of up to two times the actual damages. Plaintiffs

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

also seek attorney fees and injunctive relief. The Court finds that Defendant CarMax has adequately alleged that the amount in controversy in this action meets the jurisdictional requirement.

Having found diversity of citizenship and that the jurisdictional amount is met, the Court finds diversity jurisdiction exists in this action.

### B.     Motion to Dismiss

Defendant CarMax moves to dismiss the amended complaint in its entirety for failure to state a claim.

#### 1.     First Cause of Action - Song-Beverly Act

Defendant CarMax contends that Plaintiffs have failed to allege a viable breach of express warranty claim because the Song-Beverly Act imposes liability for the failure to repair or remedy a covered nonconformity that arose within the warranty period after a reasonable number of attempts. Defendant CarMax argues that the warranty issued by Defendant CarMax was for thirty days and there are no allegations that the vehicle was presented to Defendant CarMax within thirty days of purchase for repair and contradicts that there was a problem with the vehicle within the thirty day period. Defendant CarMax also asserts that to successfully invoke the Song-Beverly Act they had to be provided with a reasonable number of attempts to repair the vehicle and only one opportunity is not sufficient.

Plaintiff counters that Defendant CarMax could not, and would not, repair the defects in the vehicle. First, Plaintiffs argue that the defects existed at the time that the vehicle was purchased and the exact date that the defects manifested themselves cannot be determined because Defendant CarMax did not provide Plaintiffs with a completed inspection report which might document the individual components that ultimately failed and caused the warning lights to illuminate. Further, Plaintiffs contend that the fact that the defects manifested themselves after the warranty period is relevant as to whether the defects existed during the warranty period. Plaintiff also argues that Defendant CarMax's warranty is of absolutely no value if it kicks in only when the manufacturer's warranty coverage is exhausted and is therefore misleading and deceptive. Finally, Plaintiffs contend that the vehicle is not capable of being repaired and any

1  efforts that Defendant CarMax made to repair would be futile as Defendant BMW is unable to

2  remedy the issues.

3      Defendant CarMax responds that Plaintiffs have not addressed the authority showing that

4  they have failed to state a claim, but argue that Defendant CarMax should be held liable for an

5  express warranty that was never breached solely because Plaintiffs believe that a defect existed at

6  the time that the vehicle was purchased.  Defendant CarMax argues that the only express

7  warranty was the limited thirty day warranty and there are no facts alleged to show that

8  Defendant CarMax' express warranty obligations were ever triggered.

9      The Song-Beverly Act was enacted in 1970 and "regulates warranty terms, imposes

10 service and repair obligations on manufacturers, distributors, and retailers who make express

11 warranties, requires disclosure of specified information in express warranties."  Murillo v.

12 Fleetwood Enterprises, Inc., 17 Cal.4th 985, 989 (1998).  The Song-Beverly Act "is manifestly a

13 remedial measure, intended for the protection of the consumer; it should be given a construction

14 calculated to bring its benefits into action."  Kwan v. Mercedes-Benz of N. Am., Inc., 23

15 Cal.App.4th 174, 184 (1994).  "[T]he purpose of the Act was to address difficulties faced by

16 some consumers in enforcing express warranties, by the creation of additional remedies, the

17 'refund-or-replace' provisions and implied warranties, for cases in which a purchaser's goods

18 cannot be repaired to meet express warranty standards after a 'reasonable number of attempts.' "

19 Dagher v. Ford Motor Co., 238 Cal.App.4th 905, 916 (2015) (quoting Cal. Civ. Code § 1793.2,

20 subd. (d)(1), (2)).

21     To bring a claim under the Song-Beverly Act, the Plaintiff must demonstrate that 1) they

22 purchased "consumer goods"; 2) they were a "buyer" or "retail buyer," as individuals "who buy[

23 ] consumer goods from a person engaged in the business of manufacturing, distributing or selling

24 consumer goods at retail; and 3) they purchased goods from a statutory "retail seller," a person

25 that "engages in the business of selling or leasing consumer goods to retail buyers."  Dagher, 238

26 Cal.App.4th at 917.  Here, Plaintiffs allege that they were buyers who purchased a vehicle from

27 Defendant CarMax who was engaged in the business of selling used vehicles.  (FAC ¶¶ 2, 5, 8,

28 18.)  Plaintiffs have alleged sufficient facts to bring a claim under the Song-Beverly Act.

The Song-Beverly Act includes limited provisions for an express warranty to be sold and enforced for used vehicles. Dagher, 238 Cal.App.4th at 921; see Cal. Civ. Code § 1795.5. "A plaintiff pursuing an action under the [Song-Beverly] Act has the burden to prove that (1) the vehicle had a nonconformity covered by the express warranty that substantially impaired the use, value or safety of the vehicle (the nonconformity element); (2) the vehicle was presented to an authorized representative of the manufacturer of the vehicle for repair (the presentation element); and (3) the manufacturer or his representative did not repair the nonconformity after a reasonable number of repair attempts (the failure to repair element). Donlen v. Ford Motor Co., 217 Cal.App.4th 138, 152 (2013), as modified on denial of reh'g (July 8, 2013).

The statute defines an express warranty as "[a] written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance." Cal. Civ. Code § 1791.2(a)(1). "An express warranty 'is a contractual promise from the seller that the goods conform to the promise. If they do not, the buyer is entitled to recover the difference between the value of the goods accepted by the buyer and the value of the goods had they been as warranted.' " Dagher, 238 Ca.App.4th at 938 (quoting Daugherty v. American Honda Motor Co., Inc., 144 Cal.App.4th 824, 830 (2006)). "In relation to express warranties, the rules for interpreting them do not differ from those applied to other contracts." Daniel v. Ford Motor Co., 806 F.3d 1217, 1224 (9th Cir. 2015) (quoting Miller v. Germain Seed & Plant Co., 193 Cal. 62 (1924) (Seawell, J., dissenting)).

Plaintiffs argue that Defendant CarMax seeks to preclude the claim because the defects purportedly did not exist at the time that the vehicle was purchased from Defendant CarMax. But, Defendant CarMax does not contend that the vehicle did not have defects, but that the defects did not manifest themselves within the express warranty period.

The 30 day limited warranty for the vehicle states "The dealer will pay 100% of the labor and 100% of the parts for the covered systems that fail during the warranty period." (Buyers Guide, attached at ECF No. 24, p. 32.) Here, Plaintiffs do not allege that any covered systems

failed within the express warranty period. Specifically, Plaintiffs allege that within a few months of purchasing the vehicle it had engine and/or drive-train malfunction and repeated illumination of the warning lights. (FAC ¶ 43.) While Plaintiff's have attached service invoices to the first amended complaint, the earliest service invoice is dated March 11, 2015 which is more than 60 days after the express warranty expired. (ECF No. 24 at pp. 30, 36.)

Plaintiffs rely on <u>Mexia v. Rinker Boat Co., Inc.</u>, 174 Cal.App.4th 1297 (2009); and <u>Donlen</u>, for the proposition that a latent defect that manifests itself outside the warranty period is relevant to establishing that the defect existed within the warranty period. However, <u>Mexia</u> was addressing the issue in the context of the implied warranty of merchantability, not an express warranty such as that at issue here.[2]

In <u>Donlen</u>, the appellate court considered whether the trial court erred by admitting evidence of repairs after the warranty period expired to prove a violation of the Song-Beverly Act. The defendant argued that such evidence extends the terms of the warranty but the appellate court disagreed. <u>Donlen</u>, 217 Cal.App.4th at 149. A defect that first appears after a warranty has expired does not necessarily mean the defect did not exist when the product was purchased. <u>Id.</u> Post warranty repair may be relevant to show the vehicle was not repaired to conform to the warranty during the warranty's existence. <u>Id.</u> Since the Song-Beverly Act is a remedial measure intended to protect consumers, the plaintiff does not need to prove the cause of the vehicle's defect, but only need show that it did not conform to the express warranty. <u>Id.</u> But in this instance, the vehicle was not presented for repair within the warranty period.

Although Plaintiffs allege that Defendant CarMax should have known of the engine defects since 2008, the only facts alleged to demonstrate knowledge are a December 2014

---

[2] Similarly the other cases relied on by Plaintiffs are not persuasive. In <u>Jensen v. BMW of N. Am., Inc.</u>, 35 Cal.App.4th 112 (1995), as modified on denial of reh'g (June 22, 1995), the defects manifested themselves within several weeks of the plaintiff leasing the vehicle and it was brought in for repair within the warranty period. <u>Jensen</u>, 35 Cal.App.4th at 120. The issue on appeal was whether the vehicle was a new or used vehicle and whether BMW's written express new car warranty applied. <u>Id.</u> at 121-128.

In <u>Jiagbogu v. Mercedes-Benz USA</u>, 118 Cal.App.4th 1235 (2004), the vehicle defects manifested within the first week after sale and the vehicle was taken to the dealer within the warranty period for repairs. <u>Jiagbogu</u>, 118 Cal.App.4th at 1238-39. The appellate court held that the trial court properly denied a motion in limine to exclude evidence of post warranty malfunctions where the experts differed on whether certain malfunctions that occurred after the warranty period could be related to malfunctions that occurred within the warranty period. <u>Id.</u> at 1245-46.

Technical Service bulletin instructing BMW dealers to replace the batteries at every covered engine oil service and that BMW extended the warranties on the fuel delivery module in July 2015, engine pump vacuum in January 2016, and cylinder head covers crankcase ventilation line hoses in January 2016.  (FAC ¶¶ 68, 69.)  None of these events occurred prior to the Plaintiffs purchasing the vehicle from Defendant CarMax, and therefore, are not sufficient to demonstrate that Defendant CarMax had notice of problems with the vehicle.

Plaintiffs also allege that Defendant CarMax represented that it performed a check of over 125 points.  (FAC ¶¶ 32. 82-96.)  This is insufficient for the Court to infer that Defendant CarMax was aware of defects in the vehicle that did not appear until several months after it was purchased.  California courts have expressly rejected the argument that "a latent defect, discovered outside the limits of a written warranty, may form the basis for a valid express warranty claim if the warrantor knew of the defect at the time of sale."  Daugherty, 144 Cal.App.4th at 830.  In Daughterty, the court considered whether an express warranty claim can be based on repairs that occurred after the warranty had expired.  144 Cal.App.4th at 829.  The general rule in California is that an express warranty "does not cover repairs made after the applicable time or mileage periods have elapsed."  Id. at 830.  The court considered that the plaintiff had not brought an implied warranty claim, and found "as a matter of law, in giving its promise to repair or replace any part that was defective in material or workmanship and stating the car was covered for three years or 36,000 miles, Honda 'did not agree, and plaintiffs did not understand it to agree, to repair latent defects that lead to a malfunction after the term of the warranty.' "  Id. at 123.

Similar to Daughterty, Defendant CarMax express warranty covered 100% of the labor and 100% of the parts for the covered systems that failed during the thirty day period after purchase of the vehicle.  Plaintiffs have not alleged that any malfunctions occurred during the warranty period and specifically alleged that the vehicle malfunctions appeared after the warranty had expired.  As Plaintiffs have not alleged any facts that the vehicle had problems or any covered systems failed within the express warranty period, the first amended complaint fails to state a cognizable claim against Defendant CarMax for breach of the express warranty under

the Song-Beverly Act.  See Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1023 (9th Cir. 2008) (affirming dismissal of breach of express warranty claims where defects arose after the expiration of express warranty).  The Court finds that amendment of this claim would be futile and it shall be dismissed without leave to amend.

2.    Second Cause of Action – Breach of Implied Warranty of Merchantability

Defendant states that the implied warranty of merchantability does not require that the vehicle be perfect or problem free, but that it will function for its intended purpose.  Defendant CarMax contends that Plaintiffs have failed to plead any facts that they were unable to use the vehicle during the implied warranty's duration.  Further, Defendant CarMax argues that Plaintiff have failed to allege any impingement on the use of the subject vehicle other than their choice not to drive it.

Plaintiff counters that Defendant CarMax attempts to misdirect the Court as to the proper legal standard.  Further, Plaintiffs argue that where the consumer's expectations are established by Defendant CarMax's advertising that it rigorously inspected the vehicle, the fact that the vehicle actually manifested defects and was not in safe condition and substantially free from defects when it was sold to Plaintiffs states a claim for breach of the implied warranty of merchantability.

Defendant CarMax replies that the cases cited by Plaintiffs all demonstrate that the implied warranty of merchantability provides for a "minimum level of quality" and that the motion to dismiss is not misleading.  Further, Defendant CarMax contends that Plaintiffs have alleged no facts to show that the vehicle was unsafe or could not provide reasonable transportation.

Pursuant to the Song–Beverly Act, "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable."  Daniel, 806 F.3d at 1222 (quoting Cal. Civ. Code § 1792).  This implied warranty of merchantability means that the goods "(1) Pass without objection in the trade under the contract description[;] (2) Are fit for the ordinary purposes for which such goods are used[;] (3) Are adequately contained, packaged, and labeled[;] (4) Conform to the promises

or affirmations of fact made on the container or label." Cal. Civ. Code § 1791.1(a).  The implied warranty of merchantability is coextensive in duration to the express warranty, but cannot be less than 60 days nor more than one year following the sale of new consumer goods.  Cal. Civ. Code § 1791.1(c).

"Unlike express warranties, which are basically contractual in nature, the implied warranty of merchantability arises by operation of law" and "provides for a minimum level of quality."  American Suzuki Motor Corp. v. Superior Court, 37 Cal.App.4th 1291, 1295–96 (1995).  Thus, to prevail on a breach of an implied warranty of merchantability claim, the plaintiff must show that the product "did not possess even the most basic degree of fitness for ordinary use."  Mocek v. Alfa Leisure, Inc., 114 Cal.App.4th 402, 406 (2003).  Unlike a claim for breach of an express warranty, the plaintiff need not provide the seller with an opportunity to repair the defect for a breach of the implied warranty of merchantability claim.  Mocek, 114 Cal.App.4th at 407.

"[T]he implied warranty of merchantability set forth in § 1791.1(a) requires only that a vehicle be reasonably suited for ordinary use.  It need not be perfect in every detail so long as it 'provides for a minimum level of quality.' "  Keegan v. Am. Honda Motor Co., 838 F.Supp.2d 929, 945 (C.D. Cal. 2012) (citations omitted).  The basic inquiry is whether the vehicle is fit for driving.  Keegan, 838 F.Supp.2d at 945.

Plaintiffs allege that within a few months of purchasing the vehicle it experienced defective conditions, such as engine and/or drive-train malfunction and repeated warning lights. (FAC ¶ 43.)  In April 2015 the vehicle was serviced.  (FAC ¶ 47.)  In June 2015, the vehicle battery was charged and the high pressure fuel pumps were replaced.  (FAC ¶ 48.)  In August 2015, Plaintiffs experienced shifting issues and the engine warning lights illuminated.  (FAC 49.) The service record noted the battery was charged, and review of the history showed high fuel pressure plausibility faults, misfire faults, and low pressure fuel faults.  (FAC ¶ 49.)  In September 2015, the engine malfunction light illuminated.  (FAC ¶ 50.)  In August 2016, the engine malfunction light illuminated again.  (FAC ¶ 51.)

///

Plaintiffs contend that the vehicle has defects that causes it to burn large quantities of oil, the engine creates excess heat causing the engine components to fail prematurely, and there is premature wear of the engine battery causing it to need to be replaced every 10,000 miles or one year. (FAC ¶ 61.) Plaintiffs state that the oil consumption defect is unreasonably dangerous because it can cause engine failure while the vehicle is in operation exposing the vehicle occupants to risk of accident and injury. (FAC ¶ 63.)

The core test of whether a product is fit for its intended purpose is whether the product is "in safe condition and substantially free from defects." Isip v. Mercedes–Benz USA, LLC, 155 Cal.App.4th 19, 26 (2007). Courts in California "reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability. A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose." Isip, 155 Cal.App.4th at 27.

While Plaintiffs state that the oil consumption defect could cause the engine to fail while driving, the facts as alleged merely demonstrate that the vehicle has had multiple engine light illuminations that have require servicing. (FAC ¶¶ 43, 46-51.) Defendant BMW issued a technical service bulletin in December 2014 instructing dealerships to replace the battery at every oil service covered under the BMW maintenance program. (FAC ¶ 68.) In January 2015, the warranty on the fuel delivery module was extended, and in January 2016, the warranties were extended on the engine vacuum pump and cylinder head covers crankcase ventilation hoses. (FAC ¶ 69.) The allegations in the complaint plausibly allege that the vehicle may require more frequent servicing and replacement of parts. However, an increase in the frequency of maintenance and/or of replacement of parts is insufficient to find a plausible contention that the vehicle is not in a safe condition nor that it is not substantially free from defects for an implied warrant claim. See Isip, 155 Cal.App.4th at 26; Keegan, 838 F.Supp.2d at 945; see also Acedo v. DMAX, Ltd., No. CV1502443MMMASX, 2015 WL 12912365, at *21-23 (C.D. Cal. July 31, 2015)(allegation that vehicle had reduced fuel economy and vehicle utility, and that engine defects resulted in frequent regeneration cycles that hindered ability to drive from point A to point B on short trips insufficient to demonstrate that the vehicle did not meet the minimum level

of quality contemplated by the Song-Beverly Act).

Plaintiffs have not alleged facts sufficient to demonstrate that the vehicle is unfit for its intended purpose. Therefore, the Court finds that Plaintiffs have failed to state a claim for breach of the implied warranty of merchantability.

3. <u>Third and Fourth Causes of Action – Consumers Legal Remedies Act and UCL</u>

Since Plaintiffs' UCL claim arises under the conduct precluded by the CLRA, the Court shall evaluate the alleged CLRA and UCL claims together.

**a. Pleading Standard to Apply to Plaintiffs' Claims**

Defendant CarMax argues that since Plaintiffs bring this action under the CLRA alleging misrepresentations the heightened pleading standard of Rule 9 applies. Plaintiff responds that not all actions brought under the CLRA must meet the Rule 9 pleading standard.

Generally, to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). However, when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

In a case where fraud is not a necessary element of the claim, "the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1103–04 (9th Cir. 2003). However, in other cases, the plaintiff may choose to allege some fraudulent and some non-fraudulent conduct to support a claim. <u>Vess</u>, 317 F.3d at 1104. In that instance, only the allegations of fraud are subject to the the heightened pleading requirements of Rule 9. <u>Id.</u> "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." <u>Id.</u> at 1105.

In a case similar to this, the Ninth Circuit considered the pleading standard to be used in claims under the CLRA and UCL where the plaintiff alleged a car dealer used a certification process to mislead customers to purchase vehicles. <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120,

1123 (9th Cir. 2009). The court decided that Rule 9(b)'s heightened pleading standard applied to the claims for violations of the CLRA and UCL. Kearns, 567 F.3d at 1125. While fraud is not a necessary element of a claim under the CLRA or UCL, a claim that a defendant engaged in a unified course of fraudulent conduct is grounded in fraud and the complaint as a whole must satisfy the particularity pleading requirement of Rule 9(b). Id. at 1125; Vess, 317 F.3d at 1104.

While Plaintiffs are correct that the CLRA is not a fraud statute, the issue here is whether the first amended complaint alleges a unified course of fraudulent conduct and relies entirely on that conduct to state a claim. Under California law, the elements for fraud are "(a) misrepresentation (false representation, concealment, or nondisclosure ); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Kearns, 567 F.3d at 1126 (quoting Engalla v. Permanente Med. Group, Inc., 15 Cal.4th 951, 974 (Cal.1997)).

Here, Plaintiffs allege that Defendant CarMax represented that the vehicle had passed a "rigorous 125-Point Quality Inspection" and that it had been inspected for defects, was certified to be free from defects, and was sold with a warranty. (FAC ¶¶ 150, 151.) Defendant CarMax did not provide Plaintiffs with a completed vehicle inspection report. (FAC ¶ 152.) Defendant CarMax knew or should have known of the defective condition of the vehicle, specifically of the engine and/or drive-train malfunction and defects. (FAC ¶ 153.) Defendant CarMax failed to disclose and concealed material information concerning the actual quality and condition of the vehicle to Plaintiffs to induce them to purchase the vehicle and the contract amount to Defendant CarMax. (FAC ¶ 154.) Defendant CarMax misrepresented the benefits and use its quality vehicle inspection by failing to inspect the vehicle history and status for any open manufacturer recalls. (FAC ¶ 155.)

Further, Plaintiffs allege they relied on Defendant CarMax's advertising and representations as to the quality and character of the vehicle. (FAC ¶ 156.) Plaintiffs also allege they relied on the warranties and certifications of the vehicle in deciding to purchase it and would not have purchased the vehicle if they knew it did not conform to the warranties and certifications. (FAC ¶¶ 157, 158.) Plaintiffs state that Defendants CarMax and BMW

misrepresented and concealed the status and condition of the vehicle and baited Plaintiffs with the particular status, quality, and condition but switched to a vehicle of another status, quality or status. (FAC ¶¶ 159, 160, 162, 163, 164.)

Here, Plaintiffs allege that Defendants made false representations, concealed information, and failed to disclose material facts as to the condition of the vehicle to induce them to pay the purchase price, they would not have otherwise purchased the vehicle, and they suffered economic damages as a result. Similar to <u>Kearns</u>, Plaintiffs have alleged that the defendants engaged in a unified course of fraudulent conduct that is grounded in fraud and the claims under the CLRA and UCL in this action must satisfy the particularity pleading requirement of Rule 9(b). <u>Kearns</u>, 567 F.3d at 1126.

**b.** **Plaintiffs have failed to plead the CLRA and UCL claims with particularity**

1. <u>Demand Requirement</u>

Initially, Defendant CarMax alleges that Plaintiffs CLRA action is invalid on its face because Plaintiffs filed this action prior to thirty days after sending a demand letter as required by the statute. Plaintiffs respond that they did not seek damages for the CLRA claim in the original complaint and since the first amended complaint was filed more than thirty days after the demand letter was sent damages were properly included in the first amended complaint.

The CLRA provides that a merchant has thirty days to respond to a demand for correction. Cal. Civ. Code § 1782. No action for damages may be maintained if an appropriate correction, repair, replacement, or other remedy is given within a reasonable time within thirty days after receipt of the demand. Cal. Civ. Code § 1782(b). However, an action for injunctive relief can be commenced without the demand for correction. Cal. Civ. Code § 1782(d). The Plaintiffs' complaint was filed on February 17, 2017, and only sought injunctive relief on the CLRA cause of action. (ECF No. 1-1 at p. 18.) Plaintiffs' complaint did not violate the provisions of the CLRA when it was filed.

The CLRA also provides that the appropriate provisions of the statute are applicable if the complaint is amended to request damages. Cal. Civ. Code § 1782(d). When the plaintiff files a complaint seeking only injunctive relief under the CLRA, not less than thirty days after

filing the complaint and after complying with the notice provision, the plaintiff may amend his complaint to include a request for damages. <u>Cattie v. Wal-Mart Stores, Inc.</u>, 504 F. Supp. 2d 939, 949 (S.D. Cal. 2007). However, if the plaintiff sought damages in the original complaint filed, then the defect could not be cured by later providing notice and filing an amended complaint. <u>Id.</u> at 950. Plaintiffs filed the first amended complaint, adding the request for damages on August 15, 2017, more than thirty days after filing suit and sending the demand letter. Plaintiffs have complied with the CLRA in filing their amended complaint and Defendant CarMax' motion is denied on this ground.

2. <u>The first amended complaint fails to state a CLRA or UCL claim</u>

The CLRA provides a list of unfair methods of competition and unfair or deceptive acts or practices that are unlawful if taken with the intended result or that result in the sale or lease of goods or services to a consumer. Civ. Code § 1770. Conduct that is likely to mislead a reasonable consumer violates the CLRA. <u>Colgan v. Leatherman Tool Group, Inc.</u>, 135 Cal.App.4th 663, 680 (2006). "The CLRA is to be 'liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.' " <u>Colgan</u>, 135 Cal. App. 4th at 680 (citations omitted.)

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Bus. & Prof. Code § 17200. "An act can be alleged to violate any or all three of the prongs of the UCL—unlawful, unfair, or fraudulent." <u>Stearns v. Select Comfort Retail Corp.</u>, 763 F.Supp.2d 1128, 1149 (N.D. Cal. 2010) (quoting <u>Berryman v. Merit Prop. Mgmt., Inc.</u>, 152 Cal.App.4th 1544, 1554 (2007)). Plaintiffs contend that Defendant's conduct violates all three prongs of the UCL. (FAC ¶¶ 178-180.)

As the claim in this action is grounded in fraud, Plaintiffs are required to meet the pleading requirements of Rule 9 which requires more specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764 (9th Cir. 2007) (internal punctuation and citations omitted).

Plaintiffs argue that they have pleaded the claim with particularity as they allege "the BMW Vehicle was advertised and certified to have been rigorously inspected by CarMax (an undisputed fact), passed that inspection, and certified by CarMax to be of a higher quality than other non-certified vehicles, when it is alleged that it was in fact defective at the time of sale based on subsequent manifestation of mechanical issues and defects." (ECF No. 30 at 23.) However, Plaintiff does not identify the time and place of the alleged misrepresentations or who the alleged misrepresentations were made by. While Plaintiffs allege that the vehicle was advertised and certified to have been rigorously inspected, they do not state how it was advertised or when or where they saw the advertisement. Did Plaintiffs see an advertisement for the vehicle on television, in the newspaper, on-line, or in the lot? Are Plaintiffs relying on statements that were contained in written advertising or did the sales professional make the representations? Plaintiffs failure to identify the specific advertisements does not provide Defendant CarMax with adequate notice of the the alleged violations of the CLRA. In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig., 758 F.Supp.2d 1077, 1093 (S.D. Cal. 2010). The Court finds that first amended complaint fails to meet the pleading requirements of Rule 9.

"When a complaint or claim that is grounded in fraud fails to meet the heightened pleading requirements of Rule 9, the complaint or claim may be dismissed. Vess, 217 F.3d at 1107. As with dismissals pursuant to Rule 12(b)(6) the dismissal should be without prejudice if it appears that the pleading could be cured by amendment. Id. at 1108. Plaintiffs' claims for violation of the CLRA and UCL are dismissed with leave to amend for failure to state a claim.

### C. Motion to Strike

Defendant CarMax moves to strike portions of Plaintiffs' first amended complaint specifically, Defendant CarMax argues that Plaintiffs are not entitled to a civil penalty, punitive damages, or injunctive relief. In response, Plaintiffs agree to withdraw their requests for a civil penalty, punitive damages, and injunctive relief. Defendant CarMax replies that since Plaintiffs have conceded the motion to strike it should be granted in its entirety.

///

As Plaintiffs have agreed to withdraw their requests for a civil penalty, punitive damages, and injunctive relief, Defendant CarMax' motion to strike shall be granted.

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.     Defendant CarMax's motion to dismiss is GRANTED as follows:

    a.     The first cause of action is DISMISSED without leave to amend as to Defendant CarMax;

    b.     The second, third, and fourth causes of action are DISMISSED with leave to amend for failure to state a claim;

2.     Defendant CarMax's motion to strike is GRANTED as follows:

    a.     Plaintiffs' request for a civil penalty pursuant to Civil Code § 1794(c) as set forth in the first cause of action, FAC ¶¶ 122 and 125, as well as in the prayer (26:22-23), and wherever else referenced in the FAC is STRICKEN from the first amended complaint;

    b.     Plaintiffs' request for punitive damages as set forth in FAC ¶ 170 and the prayer (27:10) is STRICKEN from the first amended complaint; and

    c.     Plaintiffs' request for injunctive relief as set forth in FAC ¶ 171 and the prayer (27:12-14) is STRICKEN from the first amended complaint;

3.     Plaintiffs shall file a second amended complaint within fourteen (14) days from the date of entry of this order;

4.     Within twenty (20) days of the date of service of the second amended complaint, Defendants CarMax and BMW shall file a responsive pleading; and

///

///

///

///

///

5.  If Plaintiffs fail to file a second amended complaint in compliance with this order, this action will proceed on the first amended complaint against Defendant BMW on the first cause of action.

IT IS SO ORDERED.

Dated:   **October 3, 2017**

UNITED STATES MAGISTRATE JUDGE